IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TIMOTHY MARVIN FRICKS,

   Plaintiff

VS.

Warden STEVE UPTON, *et al.*,

   Defendants

NO. 5:10-CV-458 (MTT)

**ORDER & RECOMMENDATION**

  Plaintiff **TIMOTHY MARVIN FRICKS**, an inmate at Hays State Prison, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.

  Plaintiff also seeks leave to proceed without prepayment of the $350.00 filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).[1]  Based on plaintiff's submissions, the Court finds that plaintiff is unable to prepay the filing fee. Accordingly, the Court **GRANTS** plaintiff's motion to proceed *in forma pauperis* and waives the initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). Plaintiff is nevertheless obligated to pay the full filing fee, as will be directed later in this order and recommendation. The Clerk of Court is directed to send a copy of this order to the business manager of Hays State Prison.

*I. STANDARD OF REVIEW*

  Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to conduct an initial screening of a prisoner complaint "which seeks redress from a governmental entity or officer or employee of

---

[1] In reviewing the United States District Court PACER docket reports for Georgia, it appears that plaintiff had not incurred any "strikes" for purposes of 28 U.S.C. § 1915(g) when he filed the instant lawsuit.

a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

In order to state a claim for relief under section 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of

state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a section 1983 complaint because the plaintiffs factual allegations were insufficient to support the alleged constitutional violation). *See also* 28 U.S.C. 1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in section 1915A "shall" be dismissed on preliminary review).

## II. BACKGROUND

Plaintiff makes wide-ranging allegations arising out of two periods of confinement at Georgia Diagnostic and Classification Prison ("GD&CP") - May 5, 2009 to December 31, 2009 and March 23, 2010 to February 2011. Plaintiff sues the following defendants: Warden Steve Upton, Officer Wayman Henson, and GD&CP's Classification Committee and "Mailroom Staff Members."

In his complaint, plaintiff asserts the following:

(1) On June 23, 2009, he was placed in administrative segregation for an unspecified infraction and he remained there beyond the time he was supposed to serve. Plaintiff was not given a reason why he would not be released. As a result of "extreme emotional and mental stress," plaintiff cut his wrists and had to be treated at Augusta State Medical Prison for a week. Upon plaintiff's return to GD&CP, a prison official explained to plaintiff that his indefinite placement in segregation was due to plaintiff being investigated "for recruiting and starting a movement."

(2) Also on June 23, 2009, certain of plaintiff's "drawings, religious, political, legal, and educational literature regarding a Church of Creativity," were confiscated while plaintiff was in segregation. Plaintiff blames defendant Henson for taking his property; he further asserts that Henson, in violation of Georgia prison rules, failed to give plaintiff inventory sheets of confiscated and other property. Plaintiff's later

3

requests for the return of his property were denied for security reasons. Plaintiff additionally states that Henson set plaintiff up by placing plaintiff's "property" with another inmate, who was caught with white supremacy materials, in order to label plaintiff a "gang leader."

(3) On August 3, 2009, a "segregation hearing was held pertaining to plaintiff's status." Plaintiff alleges that his due process rights were violated because he was not allowed to attend the hearing, challenge his placement in segregation, or defend the "false allegations" against him. According to plaintiff, the GD&CP Classification Committee determined that plaintiff was the leader of an Ayran hate group.

(4) Plaintiff became an ordained minister, via the mail, with the Universal Life Church on November 29, 2009. According its website, the Universal Life Church "welcomes all who ask to get ordained." *See* www.themonastery.org. Plaintiff alleges that the defendants have violated his First Amendment right to practice his "Creative religious lifestyle." Plaintiff further alleges that he should be able to practice freely his religion and interact with others because he is an ordained minister.

(5) On March 23, 2010, because of "vague claims of gang affiliation," plaintiff was placed in GD&CP's Special Management Unit ("SMU"), where his activities and privileges were severely restricted, as compared with prisoners in the general population. In particular, while in SMU, plaintiff was only allowed to shower three times a week, was handcuffed every time he was moved within the prison, was denied library call and educational opportunities, and was forced to wear his hair "bald." Plaintiff additionally complains that he remained in SMU for eleven months (as of the time he filed his complaint), without hearing or adequate explanation.

(6) Plaintiff apparently believes that the above actions were in retaliation for his affiliation with the Church of Creativity, which is "for the White Race only."

(7) Plaintiff complains that defendant Upson was aware of and acquiesced in the above alleged deprivations, and that deprivations arose out of a custom or policy maintained by Upson.

(8) Plaintiff complains that his right of access to courts was violated by unspecified mailroom staffers' handling of his mail relating to a prior section 1983 lawsuit alleging similar claims as contained in the instant lawsuit. *See Fricks v. Upton*, 5:10-cv-258 (CAR) ("*Fricks I*"). Specifically, plaintiff alleges that his recast complaint, ordered by the Court in *Fricks I* and dated October 10, 2010, was not mailed until October 14, 2010. According to plaintiff, this recast complaint was ultimately returned for insufficient postage. Plaintiff further complains that the Court's October 22, 2010 order to show cause why *Fricks I* should not be dismissed was received by GD&CP October 26, 2010, but was not delivered to plaintiff until November 2, 2010. United States District Judge C. Ashley Royal dismissed plaintiff's complaint in *Fricks I* without prejudice on November 19, 2010, for his failure to comply with the Court's order. The Court received plaintiff's instant complaint on November 30, 2010.

Plaintiff seeks both damages and injunctive/declaratory relief. As to the latter, plaintiff asks that he be released from SMU, that he not be retaliated against, that his prison record be expunged of all references to gang affiliation, and that the defendants be suspended from their jobs.

Plaintiff has advised this Court that in February 2011, he was transferred from GD&CP to Hays State Prison (Tab # 4).

### III. DISCUSSION

#### A. Injunctive and Declaratory Relief

Plaintiff's claims for injunctive and declaratory relief were mooted by his transfer in February 2011 to Hays State Prison. *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986). A transfer or a release of a prisoner from prison will generally moot that prisoner's claims for injunctive and declaratory relief. *McKinnon v Talladega Cnty, Ala*., 745 F.2d 1360, 1363 (11th Cir. 1984). Injunctive relief is "a prospective remedy, intended to prevent future injuries," *Adler v.*

5

*Duval Cnty*, 112 F.3d 1475, 1477 (11th Cir. 1997), and, "as a result, once the prisoner has been released, the court lacks the ability to grant injunctive relief and correct the conditions of which the prisoner complained." *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.1985)).

In light of the foregoing, it is **RECOMMENDED** that plaintiff's claims for injunctive and declaratory relief be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may file written objections to this recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy hereof.

### B. Eighth Amendment Claim

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on prisoners. *Campbell v. Sikes*, 169 F.3d 1353, 1362 (11th Cir. 1999). The Supreme Court has held that Eighth Amendment claims have both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-302 (1991). To prevail on an Eighth Amendment claim, a plaintiff must demonstrate that (1) the deprivation alleged is, from an objective standpoint, "sufficiently serious"; and (2) that prison officials acted with "deliberate indifference," that is, the officials knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"[A]dministrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger*, 833 F.2d 1420, 1428-29 (11th Cir.1987). In the present case, plaintiff does not allege that he was denied adequate food, clothing,

or sanitation while in either administrative segregation or SMU. Indeed, he makes no specific allegations regarding objective conditions while he was in administrative segregation. Moreover, his only specific allegations relating to SMU are not "sufficiently serious" to constitute cruel and unusual punishment.

In light of the foregoing, it is **RECOMMENDED** that plaintiff's Eighth Amendment claim be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may file written objections to this recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy hereof.

### C. Access to Courts

In *Lewis v. Casey*, 116 S. Ct. 2174 (1996), the Supreme Court held that, to state a valid access to courts claim, a prisoner must allege an actual injury. *Id.* at 2177-79. The injury must relate to prospective or existing litigation, such as "missing filing deadlines or being prevented from presenting claims," while "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 & n.10 (11th Cir. 1998).

Plaintiff claims that mail irregularities at GD&CP violated his right of access to the courts. While irregularities involving legal mail can constitute an access to courts violation, plaintiff has not alleged sufficient facts to support such a claim. Mailroom staffers allegedly delayed the mailing of plaintiff's recast complaint in *Fricks I*, and failed to provide sufficient postage, which resulted in the complaint being returned by the Postal Service. Plaintiff further alleges that his receipt of this

Court's show cause order was delayed. When plaintiff received said order on November 2, 2010, however, he made no attempt to respond, for example, by simply mailing again his recast complaint. Judge Royal did not dismiss *Fricks I* until November 19, 2010. In any event, the dismissal was without prejudice and plaintiff has had the opportunity to raise all his claims relating to GD&CP in the instant lawsuit. Plaintiff thus has not alleged an actual injury as required by *Lewis*.

Even if plaintiff had stated a valid access to courts claim, he has failed to name specific defendants with respect to these allegations. "Mailroom Staff Members" are not a suable entity under section 1983.

Accordingly, it is **RECOMMENDED** that plaintiff's access to courts claim be **DISMISSED** from this action and that Mailroom Staff Members be **DISMISSED** as defendants herein.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may file written objections to this recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy hereof.

### D. Due Process and First Amendment Claims

The Due Process Clause protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. A prisoner states a Fourteenth Amendment due process claim when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and a constitutionally inadequate process. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir.1994). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that only in two situations may a prisoner claim violation of a protected liberty interest arising out of prison disciplinary actions: (1) when the punishment "will inevitably affect the duration of his sentence";

or (2) when the punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999). The Supreme Court in *Sandin* held that placement in segregation for 30 days did not present "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.; compare Williams v. Fountain*, 77 F.3d 372 (11th Cir. 1996) (one-year in solitary confinement is an atypical hardship); *Wallace v. Hamrick*, 229 F. App'x 827, 830-31 (11th Cir. Apr.9, 2007) (placement in administrative segregation for 28 days without hot water and adequate ventilation while awaiting disciplinary hearing supported due process claim).

In the present case, it is not clear that plaintiff was placed in administrative segregation or SMU as punishment. Quite possibly, plaintiff was so held in order to protect him or other inmates. Moreover, it is not clear that the conditions in which plaintiff was held constituted "atypical and significant hardship." *See Morefield v. Smith*, 2010 WL 5018221 at *2 (11th Cir. Dec. 9, 2010) (per curiam) ("While Morefield's four-year confinement in administrative segregation was lengthy, it did not tip the balance in favor of establishing a liberty interest when weighed against other factors in his case – the conditions of his confinement were generally equivalent to general prison population conditions....").

At this initial screening stage, however, the Court must construe all allegations liberally in favor of plaintiff. In so doing, the Court concludes that plaintiff may have alleged sufficient facts to support a due process claim. Further factual and legal development of this claim, including a responsive pleading by the defendant(s),[2] is therefore necessary. Plaintiff's due process claim shall

---

[2] Plaintiff is advised that the Court has no way of knowing the names of the Classification Committee members in order to perfect service of process in accordance with Fed.R.Civ.P. 4. Therefore,

9

therefore be allowed to go forward against Warden Steve Upton.

The Court has even greater reservations regarding plaintiff's various First Amendment claims, which arise out of his contentions that the Church of Creativity is a religion. Several courts have held that a "Church of Creativity" or a "Church of the Creator" did not constitute a religion for purposes of the First Amendment, but was instead a vehicle for white segregation. ***See Prentice v. Nevada Dept. of Corrections***, 2010 WL 4181456 (D. Nev. Oct. 19, 2010), ***Conner v. Tilton***, 2009 WL 4642392 (N.D. Cal. Dec. 2, 2009), ***Byrne v. Biser***, 2007 WL 3120296 (W.D. Pa. Oct. 23, 2007); ***see generally Africa v. Pennsylvania***, 662 F.2d 1025 (3d Cir. 1981). Again, however, given this Court's mandate to construe plaintiff's allegations liberally and in his favor, the Court finds that further development of this issue is necessary. ***See Conner*** at *11 ("Here, defendants' evidence that Creativity is a white supremacist organization does not, standing alone, establish that Creativity does not also address fundamental and ultimate issues. Nevertheless, plaintiff has failed to present evidence from which a reasonable jury could find Creativity meets the first prong of the ***Africa*** test."). Accordingly, plaintiff's claims that he was denied free exercise of his religion, that the defendants retaliated against him for such exercise, and that his religious material was confiscated shall be allowed to go forward against Warden Steve Upton and Officer Wayman Henson.

In light of the foregoing, it is hereby **ORDERED** that service be made on defendants Warden Steve Upton and Officer Wayman Henson, and that they file a Waiver of Reply, an Answer,

---

no service will be attempted on this defendant until plaintiff can provide this Court with the names of the committee members. Plaintiff is advised that it is his responsibility to ascertain their identities, which he must do before the expiration of the two year statute of limitations. ***See Talbert v. Kelly***, 799 F.2d 62, 66 n.1 (3d Cir.1986) (the naming of a Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant).

or such other response as may be appropriate under Rule 12 of the FEDERAL RULES OF CIVIL PROCEDURE, U.S.C. § 1915, and the *Prison Litigation Reform Act*. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the clerk of this court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

### DUTY TO PROSECUTE ACTION

Plaintiff is advised that she must diligently prosecute her complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, DISCOVERY AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and

correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a <u>certificate of service</u> indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## **DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the defendants from whom discovery is sought by the plaintiff. The defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE. The deposition of the plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendants and granted by the court. This 90-day period shall run separately as to each plaintiff and each defendant beginning on the date of filing of each defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery

is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: <u>except with written permission of the court first obtained</u>, **INTERROGATORIES** may not exceed TWENTY-FIVE (25) to each party, **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and **REQUESTS FOR ADMISSIONS** under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the court absent the filing of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein plaintiff is incarcerated, or the Sheriff of any county wherein she is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to

plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the *Prison Litigation Reform Act*, plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

IT IS FURTHER ORDERED AND DIRECTED that collection of monthly payments from plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of plaintiff's lawsuit or the granting of judgment against her prior to the collection of the full filing fee.

### PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the *Prison Litigation Reform Act*, in the event plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, she shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; plaintiff shall continue to remit monthly payments as required by the *Prison Litigation Reform Act*. Collection from the plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event plaintiff is released from custody and fails to remit payments. In addition, plaintiff's complaint is subject to dismissal if she has the ability to make monthly payments and fails to do so.

**SO ORDERED**, this 14th day of April, 2011.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge