IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TIMOTHY MARVIN FRICKS : | |
| : | |
| Plaintiff, : | |
| : | NO. 5:10-CV-458 (MTT) |
| VS. : | |
| : | |
| STEVE UPTON, *et al.*, : | |
| : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. : | Before the U.S. Magistrate Judge |
| : | |

## RECOMMENDATION

Defendant Steve Upton, Warden of Georgia Diagnostic and Classification Prison, has moved the Court to dismiss Plaintiff's claims. Following the Court's initial review under 28 U.S.C. § 1915A, Plaintiff's only remaining claims are: 1) First Amendment claims against Upton and Officer Wayman Henson arising out their alleged interference with Plaintiff's right to practice his faith in the Church of Creativity; and, 2) claims against Warden Upton arising from the alleged deprivation of due process in connection with Plaintiff's confinement in administrative segregation and subsequent assignment to GDCP's Special Management Unit (SMU). Because Plaintiff has failed to exhaust his available administrative remedies regarding the First Amendment claims and has failed to state a claim against Defendant Upton for violation of his due process rights, **IT IS RECOMMENDED** that Defendant Upton's Motion to Dismiss (Doc. 17) be **GRANTED**.

FACTUAL AND PROCEDURAL HISTORY

According to the allegations set forth in Plaintiff's Complaint, the facts of this case are as follows: On June 23, 2009, Plaintiff was placed in administrative segregation for an unspecified infraction. Later that day, Plaintiff's property was delivered to him by Defendant Henson. Contrary

to GDOC SOP, Defendant Henson failed to complete and provide Plaintiff with a property inventory form. When asked, Henson denied taking any of Plaintiff's property. Plaintiff later discovered that he was missing certain religious, political, legal, and educational documents relating to an "all white religious movement" known as the Church of Creativity.

Sometime between June 26, 2009 and July 23, 2009, Inmate Robin Brad Tedder was searched by Defendant Henson. During this search, materials relating to a white supremacy movement were discovered and confiscated. Henson placed Inmate Tedder in administrative segregation pending further investigation.

On July 23, 2009, the date upon which Plaintiff's thirty day stint in administrative segregation was scheduled to end, he was informed that he would remain in segregation. He was not informed of the reason for this decision. Also on that date, as a result of the "extreme emotional and mental stress" caused by this news, Plaintiff cut his wrists and was sent to Augusta State Medical Prison for treatment. On July 30, 2009, Plaintiff returned to GDCP and was placed back into administrative segregation. When Plaintiff asked why he was sent back to segregation, he was told that he was under investigation "for recruiting and starting a movement." A prison official then showed Plaintiff scanned images of documents confiscated from Inmate Tedder. Some of these documents were related to the Church of Creativity. According to Plaintiff, the compilation of these documents, along with his known participation in the Church of Creativity, led prison officials mistakenly to suspect that the Church of Creativity was a white supremacy group and that Plaintiff was its leader.

On August 3, 2009, the Classification Committee held a hearing on Plaintiff's status. Plaintiff was not allowed to attend the hearing and was not permitted to provide written statements, call witnesses, or otherwise defend himself. At the conclusion of this hearing, the Classification

Committee determined that Plaintiff was the leader of an "Aryan Hate Group." As a result, Plaintiff was kept in administrative segregation until December 31, 2009 when he was transferred to Autry State Prison.

On March 23, 2010, Plaintiff returned to GDCP where he was assigned to the Special Management Unit, based on "vague claims of gang affiliation." While in SMU, Plaintiff maintains that he was only allowed to shower three times a week, was handcuffed every time he was moved within the prison, was denied library call, social and educational opportunities, and was forced to wear his hair "bald." Plaintiff claims that he remained in SMU for more than a year without any hearing or further explanation.

In view of the above, Plaintiff claims that he has suffered numerous violations of his First and Fourteenth Amendment rights. Specifically, he argues that the Defendants' actions were in retaliation for or were otherwise improperly motivated by his affiliation with the Church of Creativity. Moreover, and with particular regard to Defendant Upton, Plaintiff complains that Upton was aware of and acquiesced in the above alleged deprivations, and/or that the deprivations arose out of a custom or policy maintained by Upton.

## DISCUSSION

**I. First Amendment Claims**

Plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment rights claims. The undisputed evidence shows that Plaintiff initially submitted a grievance that failed to comply with the requirements of the prison's Standard Operating Procedures. After this grievance was rejected, Plaintiff did not attempt to file a corrected grievance or appeal the rejection.

The Prison Litigation Reform Act (PLRA) mandates that an incarcerated plaintiff must exhaust all of his available administrative remedies before bringing any action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). Further, the PLRA requires the *proper exhaustion* of administrative remedies, and a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective administrative grievance. See Woodford v. Ngo, 548 U.S. 81 (2006). Claims that are not properly exhausted must be dismissed. Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999). The Eleventh Circuit has made it clear that the exhaustion of available administrative remedies is a precursor to a prisoner's filing a civil rights action, even when the administrative procedures set forth by the prison are futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998).

Where a motion to dismiss is based on the affirmative defense of failure to exhaust administrative remedies, review of the motion involves a two-step process. See Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). The court first looks to the factual allegations in the motion seeking dismissal as well as those in the plaintiff's response. If they conflict, the court takes the plaintiff's version of the facts as true. Id. at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the compliant is not subject to dismissal under the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At the second stage of the analysis, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. Id.

The instant claims can be resolved at the first stage of the Turner analysis. In support of this argument, Defendant Upton submitted: (1) the affidavit of GDCP Grievance Coordinator Gary Caldwell; (2) a copy of the Georgia Department of Corrections Standard Operating Procedures for

the statewide grievance procedure (GDOC SOP); (3) a copy of Plaintiff's rejected informal grievance; (4) a completed form titled "Codes for Rejected Grievances." See Doc.17-1 through Doc.17-4.

According to these documents, Plaintiff's only attempt to exhaust his First Amendment claims consisted of a single informal grievance that he submitted on April 1, 2010. That grievance stated three separate issues. First, Plaintiff complained that "the D.O.C. is discriminating against me for my personal beliefs and teachings." Doc.17-4. Second, Plaintiff asserted that the Defendants had him placed "in SMU [at GDCP] to stop me from practicing my religion and beliefs with others." Id. Third, Plaintiff alleged that the Defendants "false labeled me and defamed my character in order to punish me and cause me grief and suffering." Id.

On April 13, 2010, Plaintiff's grievance was rejected because it stated more than one issue, in violation of GDOC's Standard Operating Procedures. Id. The Informal Grievance Procedure, as described in the Standard Operating Procedures, clearly states that "The complaint on the Informal Grievance Form must be a single issue/incident and the entire complaint must fit on the Informal Grievance Form." Def. Attachment 1 at p. 6 (Doc. 17-3). The Procedures further state that "[w]hen an inmate attempts to grieve an item that…does not comply with the requirements of this procedure, it will be rejected, noting the specific reason for this action." Id. Plaintiff's informal grievance was rejected because it included more than one issue. See Def. Attachment 2 at p. 3 (Doc. 17-4). After learning that his grievance had been rejected, prison records indicate that Plaintiff chose not to file another informal grievance about violations of his First Amendment rights prior to filing his lawsuit on November 30, 2010. Caldwell Aff. ¶11 (Doc.17-2).

Plaintiff acknowledges that he filed the April 1 grievance. Doc. 23. He argues, however, that the grievance was improperly rejected because the three allegations set forth in the grievance

concerned only one issue – his "right to practice his non-violent religion and share those beliefs with others in a non-violent way." Id. Explaining that prison policy prohibiting an issue from being grieved more than once, Plaintiff concludes that he "reasonably and in good faith pursued [all available] administrative remedies on this issue." Id.

On its face, Plaintiff's informal grievance clearly raised more than one issue. Additionally, upon receiving the rejection, Plaintiff had the opportunity to correct the error and file three separate grievances or an amended grievance stating only one issue. It is undisputed that Plaintiff failed to separate or distill his claims and file another grievance. Consequently, Plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment claims and those claims should be dismissed.

## II. Due Process Claims

In his two due process claims, Plaintiff alleges that Upton failed to ensure that Plaintiff was afforded due process, in violation of both prison regulations and Plaintiff's Fourteenth Amendment rights. The first claim concerns Plaintiff's confinement in administrative segregation from July 23, 2009, through December 31, 2009. The second involves Plaintiff's subsequent assignment to GDCP's Special Management Unit. Because these claims against Upton are based upon a theory of vicarious liability, the Complaint fails to state a claim against Upton for violations of due process rights.

### Administrative Segregation Claim

Plaintiff alleges that he was denied due process when the Classification Committee at GDCP did not allow Plaintiff to attend or present a defense at the August 3, 2009 segregation hearing. Plaintiff contends that Defendant Upton, as Warden of GDCP, failed to ensure that the Classification Committee provide due process in segregation decisions. Because Plaintiff's claims against Upton

are based upon a theory of vicarious liability and do not allege that Upton participated in the decision to keep Plaintiff in segregation, the claims must be dismissed.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003) (internal quotation marks and citation omitted). As such, supervisory officials may only be held liable when they have personally participated in unconstitutional conduct or where there is "a causal connection between [their] actions ... and the alleged constitutional deprivation." Id. To establish this causal connection, a plaintiff must show that the supervisor: "(1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would." Gross v. White, 340 Fed. Appx. 527 (11th Cir. 2009) (citing Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir.2007)).

Plaintiff's due process claims against Upton are based on the premise that Upton failed to supervise the Classification Committee to ensure that the Committee followed the procedural requirements for extending placement in segregation. According to the Complaint, Department of Corrections Standard Operating Procedures provide that the Warden "shall ensure" that the Committee follow certain procedures, such as convening a formal hearing within ninety-six hours after the inmate placed in administrative segregation; providing the inmate a memorandum stating the reason why he is being placed in segregation, and allowing the inmate to call witnesses or have an advocate at the hearing. Complaint ¶ 16. The Standard Operating Procedures cited by Plaintiff thus give the Warden a supervisory role over the Classification Committee.

Under Section 1983, Upton cannot be held liable for the mere failure to exercise his supervisory responsibilities over subordinates. Plaintiff must allege that the Upton somehow

participated in the violation, either by directing his subordinates to violate his rights, establishing a policy or custom that led to the violation of his rights, or by failing to act when he knew such a violation would occur.  There is nothing in the Complaint to indicate that Upton directed the Classification Committee to extend Plaintiff's segregation or that Upton instituted a policy or custom of refusing to provide due process for segregation decisions.  In the absence of such allegations, the Complaint fails to state a claim against Upton upon which relief can be granted.

### Special Management Unit Claim

Plaintiff also alleges that the Classification Committee failed to provide him with due process before assigning him to Special Management Unit.  Plaintiff further argues that, by virtue of his supervisory role over the Classification Committee, Defendant Upton is also responsible for this failure and, as such, liable for the alleged constitutional deprivation.

There are no allegations in the Complaint to indicate that Defendant Upton personally participated in the allegedly unconstitutional actions of the Classification Committee.  Furthermore, Plaintiff has failed to establish any causal connection between Upton's actions and the allegedly violative conduct of his subordinates. In fact, Plaintiff's only attempt to demonstrate such a connection consists of an allegation that Defendant Upton "caused, created, authorized, condoned, ratified, approved, or knowingly, willfully, wantonly, and recklessly acquiesced in the in the unconstitutional customs and practices which prevailed at GDCP and GDCP's SMU." Given the conclusory nature of Plaintiff's allegation, coupled with the complete absence of any factually substantive allegations to support the same, Plaintiff has failed to demonstrate any connection whatsoever between Defendant Upton's actions and those of the Classification Committee. Accordingly, Plaintiff's claim against Defendant Upton with regard to this alleged violation must be dismissed.

## CONCLUSION

**IT IS RECOMMENDED** that Defendant Upton's Motion to Dismiss be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 15th day of February, 2012.


                                          s/ Charles H. Weigle
                                          Charles H. Weigle
                                          United States Magistrate Judge